UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH KETSENBURG, ) | |
| ) | |
| Movant, ) | |
| ) | |
| v. ) | Case No. 4:18 CV 2155 CDP |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM AND ORDER

On April 21, 2010, movant Joseph Ketsenburg pled guilty to two counts of possession of child pornography. Case No. 4:09CR690 CDP. On July 21, 2010, I sentenced him to two concurrent terms of 120 months' imprisonment, to be followed by a lifetime term of supervised release. That supervision began March 2, 2018. Upon petition and recommendation by the probation office, an arrest warrant issued for Ketsenburg on May 21, 2018, for alleged violations of his supervised release. Ketsenburg appeared before me on June 28, 2018, waived a hearing, and admitted to the violations – specifically, that he intentionally engaged in prolonged contact with minors, loitered within 500 feet of a park, failed to answer truthfully and disclose to the probation office his ongoing relationship with a woman with three minor children, and associated with a convicted felon. I revoked his supervised release and sentenced him to two concurrent terms of ten

months' imprisonment, again to be followed by a lifetime term of supervised release.  While incarcerated on that revocation, he filed this motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, challenging the conditions of supervised release that I imposed in June 2018.[1]  For the reasons that follow, I will deny Ketsenburg's motion to vacate.  I will not hold an evidentiary hearing on the motion nor appoint counsel.

    In his motion to vacate, Ketsenburg raises five claims for relief:

    1)    That the Court improperly included conditions of supervised release in its written judgment that were not included in its oral pronouncement of judgment;

    2)    That Special Condition 11, pertaining to polygraph testing, violates the Fifth Amendment of the Constitution, his right to due process, and the Takings Clause;

    3)    That Special Condition 6, prohibiting him from going to or remaining at any place where he knows children under the age of 18 are likely to be, is unconstitutionally vague as demonstrated by his probation officer's earlier refusal to permit him to go to any library, which denied him access to legal research and the courts;

    4)    That Standard Condition 12, requiring third-party notification, is vague, overbroad, and was not part of the oral pronouncement of judgment; and

    5)    That the Court improperly relinquished its authority over his supervision, resulting in the probation office imposing additional conditions of release that were not ordered by the Court.

Ketsenburg has also filed various supplements, expounding on the claims raised in

---

[1] His supervised release began March 22, 2019, after he was released from prison.

his motion.  In response to Ketsenburg's motion and his supplementations, the government avers that Ketsenburg's claims are refuted by the record and have no basis in law and therefore must be denied.  For the following reasons, I agree.

## Discussion

Oral Pronouncement versus Written Judgment

Ketsenburg contends in Ground 1 and throughout his remaining grounds for relief that he was denied due process because the written judgment imposed conditions of release that were not orally pronounced when he was sentenced on June 28, 2018.  This claim is directly refuted by the record and will be denied.

*Standard Conditions of Release*

It is well established that the oral pronouncement by the sentencing court is the judgment of the court.  When a court orally pronounces that standard conditions of supervised release will apply, mechanical reference to each standard condition is not required at the sentencing hearing, and enumeration of the standard conditions in the written judgment does not conflict with the general oral pronouncement that they will apply.  *United States v. Drapeau*, 644 F.3d 646, 657 (8th Cir. 2011).  Ketsenburg's claim that he is not bound by the standard conditions set out in the written judgment because I did not orally enumerate them when I sentenced him in June 2018 is without merit.

*Special Conditions of Release*

Additional special conditions of supervised release must be orally pronounced at sentencing, and if there is any difference between the court's oral pronouncement of a special condition and the written judgment, the oral sentence controls. *United States v. Mays*, 993 F.3d 607, 622 (8th Cir. 2021). If the court's written judgment is consistent with its discernable intent in the oral pronouncement and simply clarifies an imprecisely pronounced special condition, there is no conflict and the written judgment controls. *Id.* I have reviewed the transcript of the sentencing hearing (Case No. 4:09CR690 CDP, ECF 60) and compared my oral pronouncement of the special conditions with those set out in the written judgment (*Id.*, ECF 52). They are identical in all relevant respects. The written judgment contains no condition that was not included in the oral pronouncement. Nor can the written judgment be read to contain additional restrictions that were not pronounced at the sentencing hearing. Ketsenberg's claim otherwise is directly refuted by the record and without merit.

Accordingly, Ketsenburg's claim that he is not bound by certain conditions of release because they were not orally pronounced at sentencing is denied.

Special Condition 11

Special Condition 11 provides:

You must submit to periodic polygraph testing at the discretion of the probation officer as a means to ensure that you are in compliance with

the requirements of your supervision or treatment program.

(Case No. 4:09CR690 CDP, ECF 52 at p. 6; *see also id.*, ECF 60 at p. 20.) Ketsenburg was also instructed that, as part of his additional conditions of supervision, he was required to pay costs associated with the services provided based on a copayment fee determined by the probation office. (*Id.*, ECF 52 at p. 6, ECF 60 at p. 17.)

"Polygraph testing supports the Sentencing Commission's policy that sex offenders participate in a program for treatment and monitoring." *United States v. Smith*, 960 F.3d 1107, 1110 (8th Cir. 2020). Because such testing is used for monitoring and treatment and not as evidence at trial or sentencing, Ketsenburg's claim of due process violations because of the test's unreliability has no basis in law and will be denied. *Id.* Moreover, a defendant on supervised release retains the privilege to invoke his Fifth Amendment rights. *United States v. Kappes*, 782 F.3d 828, 855-56 (7th Cir. 2015). Nothing in the special condition for polygraph testing infringes on this right. *Id.*; *see also United States v. Zinn*, 321 F.3d 1084, 1092 (11th Cir. 2003). Ketsenburg's claim otherwise fails.

Nor does requiring Ketsenburg to pay a portion of the costs of this treatment tool violate the Takings Clause, as the court's authority to direct such payment is expressly set out in 18 U.S.C. § 3672. Ketsenburg does not contend that he is unable to pay the costs of polygraph testing, and the probation office has not

reported to me that Ketsenburg is unable to pay. Although a defendant may not be recommitted to prison for mere inability to pay, nothing before me shows that to be a risk here. Accordingly, I will deny Ketsenburg's claim that requiring him to pay partial costs of polygraph testing violates the Takings Clause.

Special Condition 6

Special Condition 6 provides:

You are prohibited from engaging in any occupation, business, profession, or volunteer work where you have access to children under the age of 18 without prior written approval from the probation office. You must not go to, or remain at, any place where you know children under the age of 18 are likely to be, including parks, schools, playgrounds, and childcare facilities. You must not go to, or remain at, a place for the primary purpose of observing or contacting children under the age of 18.

(Case No. 4:09CR690 CDP, ECF 52 at p. 6; *see also id.*, ECF 60 at p. 19.) Ketsenburg contends that this condition is unconstitutionally overbroad and vague, as demonstrated by his probation officer's earlier invocation of this condition to allegedly prohibit him from going to libraries. He anticipates that his probation officer will continue to prohibit him from going to libraries, which will prevent him from conducting legal research on pending litigation and thus deny him access to courts. Ketsenburg also argues that given the vagueness of this condition, it could be read to restrict him from going to churches, fast food restaurants, and the like.

As a general matter, a condition of supervised release barring a child-

pornography felon from places where children under the age of 18 are likely to be is designed to limit such felon's access to children and is neither overbroad nor vague. *United States v. Crume*, 422 F.3d 728, 734 (8th Cir. 2005); *see also United States v. Smith*, 961 F.3d 1000, 1005 (8th Cir. 2020) (noting that such conditions are common). An absolute ban on a felon's access to libraries, however, is disfavored given its potential to infringe upon the fundamental right of access to courts. *See United States v. Bender*, 566 F.3d 748, 753 (8th Cir. 2009) (citing *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). But Special Condition 6 does not itself place an absolute ban on Ketsenburg's access to libraries. And even if the probation office in its discretion were to limit such access, the record in this case and in Case No. 4:09CR690 CDP shows that the probation office has granted permission for Ketsenburg to conduct computer-based legal research at other venues. Special Condition 6 does not infringe upon Ketsenburg's right to access the courts.

To the extent Ketsenburg argues that the condition has the potential to restrict him from several other public locations, the lack of a comprehensive listing of prohibited places is not fatal to the validity of the special condition. Indeed, it would be impossible to list within the text of this condition every specific location that Ketsenburg is prohibited from frequenting. "Sentencing courts must inevitably use categorical terms to frame the contours of supervised release

conditions. Such categorical terms can provide adequate notice of prohibited conduct when there is a commonsense understanding of what activities the categories encompass." *United States v. Paul*, 274 F.3d 155, 167 (5th Cir. 2001). There is sufficient common understanding of the types of locations "where you know children under the age of 18 are likely to be" to satisfy the constitutional requirement of reasonable certainty in this case. *See id.*, citing cases.

Special Condition 6 is neither impermissibly vague nor unreasonably broad. It puts an ordinary person on notice that they must avoid places where one can expect to encounter children, and it does not invite arbitrary enforcement. Nor does it infringe on Ketsenburg's right to access the courts. This claim is denied.

Standard Condition 12

Standard Condition 12 provides:

If the probation officer determines that you pose a risk to another person (including an organization), the probation officer may require you to notify the person about the risk and you must comply with that instruction. The probation officer may contact the person and confirm that you have notified the person about the risk.

(Case No. 4:09CR690 CDP, ECF 52 at p. 5.) Ketsenburg asserts that the condition is vague because the term "risk" is undefined and there is no guidance as to which third parties qualify as "another person" to be notified and what needs to be disclosed to them. The Eighth Circuit has repeatedly rejected this argument. *See United States v. Janis*, 995 F.3d 647, 653 (8th Cir. 2021); *United States v.*

*Robertson*, 948 F.3d 912, 920 (8th Cir. 2020).

As in *Janis* and *Robertson*, the condition here states that Ketsenburg's probation officer will determine whether Ketsenburg poses a risk to a particular person, and only then may he require Ketsenburg to notify that person of the particular risk. Thus, the "scope of this condition can be ascertained with sufficient ease," *United States v. Key*, 832 F.3d 837, 840 (8th Cir. 2016), because the probation officer will identify and communicate the risk to Ketsenburg before Ketsenburg has a duty to inform another person of that risk, *see United States v. Hull*, 893 F.3d 1221, 1223-34 (10th Cir. 2018) (upholding a similar condition of supervised release). Moreover, if there is genuine confusion about what the condition requires, Ketsenburg "may ask these questions of his probation officer, who is statutorily required to 'instruct [him] . . . as to the conditions specified by the sentencing court.'" *United States v. Forde*, 664 F.3d 1219, 1224 (8th Cir. 2012) (quoting 18 U.S.C. § 3603(1)).

Ketsenburg's challenge to Standard Condition 12 is denied.

<u>Probation Office Enforcement</u>

Finally, Ketsenburg contends that the probation office usurped this Court's authority by imposing restrictions on him greater than those contemplated by the conditions of supervised release. Ketsenburg specifically complains that his probation officer imposed travel restrictions more limiting than those set out in his

conditions and authorized searches of Ketsenburg's property without reasonable suspicion of unlawful conduct or violations of conditions of supervision.

As an initial matter, I note that Ketsenburg's complaints involve alleged conduct that occurred prior to his revocation and thus prior to his present supervision. Notably, his initial supervised release was revoked on his admission that he intentionally engaged in prolonged contact with minors, loitered within 500 feet of a park, failed to answer truthfully and disclose to the probation office his ongoing relationship with a woman with three minor children, and associated with a convicted felon – all in violation of specific conditions of supervised release. The nature of his violations did not involve restricted travel or the fruits of any alleged unlawful searches.

Nevertheless, to the extent Ketsenburg contends that the Court impermissibly delegated its authority to the probation office over the conditions presently in place, his claim is without merit. "[A] special condition of supervised release is an impermissible delegation of authority only where the district court gives an affirmative indication that it will not retain ultimate authority over all of the conditions of supervised release." *Janis*, 995 F.3d at 653 (internal quotation marks and citations omitted). As long as the judicial officer retains and exercises ultimate responsibility, conditions delegating limited authority to non-judicial officials such as probation officers are permissible. *United States v. Thompson*,

888 F.3d 347, 351-52 (8th Cir. 2018).  My authorization for the probation office to exercise discretion in the enforcement of some conditions of supervised release did not relinquish my ultimate authority over any of the conditions of release.  *See United States v. Fenner*, 600 F.3d 1014, 1027 (8th Cir. 2010).  A simple review of the criminal case record in 4:09CR690 CDP shows this to be true.

I will deny Ketsenburg's claim that I improperly delegated my judicial authority to the probation office, and I reject his challenge to the manner by which the probation office enforced his previous conditions.

<u>Neither an Evidentiary Hearing nor Appointed Counsel is Required</u>

Because the record before me conclusively demonstrates that Ketsenburg has no right to relief, I will not hold an evidentiary hearing in this matter.  *See Anjulo-Lopez v. United States*, 541 F.3d 814, 817 (8th Cir. 2008).  Nor do the interests of justice require that I appoint counsel to assist Ketsenburg with his claims.  *See* 18 U.S.C. § 3006A(a)(2)(B).  Ketsenburg has ably presented his claims to the Court, and the factual and legal bases of the claims are not complex.  The appointment of counsel is not warranted in such circumstances.  *Morris v. Dormire*, 217 F.3d 556, 558-59 (8th Cir. 2000); *Scott v. United States*, No. 1:20-CV-00098 JAR, 2020 WL 5880360, at *1 (E.D. Mo. Oct. 2, 2020).  I will therefore deny Ketsenburg's motion for appointment of counsel.

Finally, given that Ketsenburg has not made a substantial showing that he

was denied a federal constitutional right, I will not issue a certificate of appealability in this action. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997) (citing *Flieger v. Delo*, 16 F.3d 878, 882-83 (8th Cir. 1994)) (substantial showing must be debatable among reasonable jurists, reasonably subject to a different outcome on appeal or otherwise deserving of further proceedings).

Accordingly,

**IT IS HEREBY ORDERED** that movant Joseph Ketsenburg's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255 [1] is denied.

**IT IS FURTHER ORDERED** that movant's motion for status update [32] is denied as moot. His motion to appoint counsel [33] is denied.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability, as Ketsenburg has not made a substantial showing of the denial of a federal constitutional right.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 4th day of February, 2022.